UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALAN F. ROBERTSON,<br><br>               Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security<br>Administration[1],<br><br>               Defendant. | NO: 12-CV-3116-TOR<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary

judgment (ECF Nos. 19 and 20).  Plaintiff is represented by Victoria Chhagan.

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on

February 14, 2013.  Under Rule 25(d) of the Federal Rules of Civil Procedure,

Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

No further action need be taken to continue this suit by reason of the last sentence

of 42 U.S.C. § 405(g).

1   Defendant is represented by Kathy Rief.  This matter was submitted for

2   consideration without oral argument.  The Court has reviewed the administrative

3   record and the parties' completed briefing and is fully informed.  For the reasons

4   discussed below, the Court grants Defendant's motion and denies Plaintiff's

5   motion.

6   JURISDICTION

7   The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g);

8   1383(c)(3).

9   STANDARD OF REVIEW

10  A district court's review of a final decision of the Commissioner of Social

11  Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is

12  limited: the Commissioner's decision will be disturbed "only if it is not supported

13  by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

14  1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

15  relevant evidence that "a reasonable mind might accept as adequate to support a

16  conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently,

17  substantial evidence equates to "more than a mere scintilla[,] but less than a

18  preponderance."  *Id.* (quotation and citation omitted).  In determining whether this

19  standard has been satisfied, a reviewing court must consider the entire record as a

20  whole rather than searching for supporting evidence in isolation.  *Id.*

1    In reviewing a denial of benefits, a district court may not substitute its

2    judgment for that of the Commissioner.  If the evidence in the record "is

3    susceptible to more than one rational interpretation, [the court] must uphold the

4    ALJ's findings if they are supported by inferences reasonably drawn from the

5    record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

6    court "may not reverse an ALJ's decision on account of an error that is harmless."

7    *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's]

8    ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).

9    The party appealing the ALJ's decision generally bears the burden of establishing

10   that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

12   A claimant must satisfy two conditions to be considered "disabled" within

13   the meaning of the Social Security Act.  First, the claimant must be "unable to

14   engage in any substantial gainful activity by reason of any medically determinable

15   physical or mental impairment which can be expected to result in death or which

16   has lasted or can be expected to last for a continuous period of not less than twelve

17   months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

18   "of such severity that he is not only unable to do his previous work[,] but cannot,

19   considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

several impairments recognized by the Commissioner to be so severe as to

preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed concurrent applications for supplemental security income disability benefits and disability insurance benefits on November 16, 2004. Tr. 77-81. He alleged an onset date of February 1, 2004. Tr. 1046. These applications were denied initially and upon reconsideration and a hearing was requested. Tr. 821-21. A hearing was held before an Administrative Law Judge ("ALJ") in December 2007. The ALJ rendered a decision denying Plaintiff benefits on January 7, 2008. Plaintiff appealed this decision to the United States District Court

1  for the Western District of Washington, which granted a stipulated motion to

2  remand the case for further consideration on October 8, 2009.  Tr. 1065-66.

3      A second hearing was held before an ALJ on April 14, 2010.  Tr. 1045.  The

4  ALJ rendered a decision denying Plaintiff benefits on June 22, 2010.  Tr. 1045-59.

5  The ALJ concluded at step one that Plaintiff had not engaged in substantial gainful

6  activity since the alleged onset date.  Tr. 1048.  At step two, the ALJ found that

7  Plaintiff had severe impairments consisting of depressive disorder not otherwise

8  specified and polysubstance abuse in remission.  Tr. 1048.  At step three, the ALJ

9  found that Plaintiff's severe impairments did not meet or medically equal the

10 listings found in 20 C.F.R. Pt. 404, Subpt. P, App'x 1.  Tr. 1049.  At step four, the

11 ALJ found that Plaintiff had the residual functional capacity to perform a full range

12 of work at all exertional levels consisting of simple routine tasks which required

13 only occasional contact with the general public.  Tr. 1050-56.  At step five, the

14 ALJ concluded that there were a significant number of jobs existing in the national

15 economy which Plaintiff could perform in view of his residual functional capacity

16 and denied his claims on that basis.  Tr. 1057.

17     The Appeals Council denied Plaintiff's request for review on July 25, 2012,

18 making the ALJ's decision the Commissioner's final decision for purposes of

19 judicial review.  Tr. 1028-30; 20 C.F.R. §§ 404.981, 416.1484, and 422.210.

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

ISSUES

Plaintiff raises four issues for review:

1. Did the ALJ err in failing to properly consider the limiting effects of Plaintiff's auditory hallucinations?

2. Did the ALJ improperly reject lay witness testimony concerning the severity of Plaintiff's impairments?

3. Did the ALJ err at step five?

DISCUSSION

**A. Consideration of Plaintiff's Auditory Hallucinations**

Plaintiff asserts that the ALJ erred in failing to list Plaintiff's auditory hallucinations as a severe impairment at step two. ECF No. 19 at 5-17. While styled as a step two challenge, this argument is better addressed to the ALJ's findings at step four. Given that the ALJ expressly considered the effects of Plaintiff's auditory hallucinations in fashioning the RFC, any potential error at step two was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ's failure to list plaintiff's bursitis as a severe impairment at step two was harmless where ALJ considered limitations caused by the condition at step four).

Having carefully reviewed the record, the Court finds that the ALJ did not err in evaluating the limiting effects of Plaintiff's auditory hallucinations. While there is no dispute that Plaintiff does, in fact, suffer from auditory hallucinations,

1    there is little to suggest that the hallucinations materially interfere with his ability

2    to work.  As a threshold matter, the medical evidence illustrates that Plaintiff

3    responds well to medication (specifically Ziprasidone) designed to reduce his

4    auditory hallucinations.  Plaintiff reported to Dr. Rogers in June 2005 that the

5    voices in his head "have been almost completely eliminated with Ziprasidone."  Tr.

6    396.  During a follow-up visit with Dr. Rogers in October 2005, Plaintiff reported

7    that an increase in his Ziprasidone dosage further decreased the frequency and

8    intensity of his auditory hallucinations.  Tr. 375.  Plaintiff made similar reports to

9    Dr. Jensen in November 2008 and April 2009, explaining that while his auditory

10    hallucinations persisted, they were generally well controlled by his medication.  Tr.

11    1132, 1135.  As a result, Dr. Jensen concluded that Plaintiff was "stable, which

12    includes chronic [auditory hallucinations]."  Tr. 1132.  This evidence clearly

13    supports the ALJ's conclusion that Plaintiff's auditory hallucinations are not as

14    debilitating as alleged.

15          Furthermore, the medical evidence reflects that Plaintiff's auditory

16    hallucinations do not substantially interfere with his ability to interact with others.

17    From 2005 through 2009, Plaintiff routinely made meaningful contributions during

18    group therapy sessions and almost never needed to be prompted to participate.

19    Plaintiff was also able to successfully work alongside others during his vocational

20    rehabilitation work at the VA hospital in Seattle.  Indeed, Plaintiff reported to his

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

physician, Dr. Doles, in October 2008 that he enjoyed working in the Physical

Therapy department, hoped to land a permanent paid position there in the future,

and felt that he had a good relationship with department staff.  Tr. 1137.  From

these positive reports, Dr. Jensen concluded in June 2009 that working alongside

others actually *minimized* the effects of Plaintiff's auditory hallucinations.  In view

of this evidence, the ALJ did not err in finding that Plaintiff was able to "perform

simple and routine tasks with [only] occasional contact with the public."  Tr. 1055.

Finally, the ALJ did not err in giving only "minimal weight" to the opinions

of Dr. Cotton, Dr. Bondurant, Dr. Flagel and Dr. Rogers contained in a series of

DSHS standardized assessments.  In assessing the opinions at issue, the ALJ wrote:

> After careful review of the medical evidence, I give minimal weight to
> these mental assessments of disability, as they are simply not
> supported by the objective medical evidence discussed in detail above.
> These opinions are brief and conclus[ory] in form with little in the
> way of clinical findings to support their conclusions.  The assessments
> are devoid of detailed mental examinations.  These opinions are not
> consistent with the substantial evidence of record, including the
> objective findings and observations, notes and opinions of the same
> and other treating and examining physicians.  As a whole, these
> psychologists and psychiatrists appear to have accepted [Plaintiff's]
> subjective complaints, and their opinions . . . appear reflective of a
> position of "advocate" for [Plaintiff].  As such, the opinions of Dr.
> Cotton, Dr. Bondurant, Dr. Rogers and Dr. Rogers are not supported
> by the overall evidence of record and they are not afforded significant
> weight in this decision making process in accordance with SSR 96-5p.

Tr. 1056.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

1    The Court finds that this explanation is supported by substantial evidence in

2    the record.  Where a treating or examining physician's opinion is contradicted, an

3    ALJ must "determine credibility and resolve the conflict."  *Valentine v. Comm'r of*

4    *Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (quoting *Thomas v. Barnhart*,

5    278 F.3d 947, 956-57 (9th Cir. 2002)).  Here, the ALJ correctly resolved the

6    conflict in favor of these physicians' own detailed clinical notes and the thorough

7    findings of Dr. Jensen, another treating physician.  In the final analysis, the

8    conclusory findings upon which Plaintiff relies are simply not credible in light of

9    the substantial medical evidence indicating that Plaintiff's auditory hallucinations

10   are well-controlled with medication and do not substantially interfere with his

11   ability to maintain full time employment with appropriate restrictions.

12   **B. Lay Witness Testimony**

13        Next, Plaintiff contends that the ALJ erred in rejecting the lay witness

14   testimony of Scott Penderson, Charles Clifton, William Weidlich, and Edwin

15   Villeza from the first hearing in 2004.  ECF No. 19 at 17-20.  The Ninth Circuit

16   recently summarized the law on lay witness testimony as follows:

17        Lay testimony as to a claimant's symptoms or how an impairment
          affects the claimant's ability to work is competent evidence that the
18        ALJ must take into account.  We have held that competent lay witness
          testimony cannot be disregarded without comment and that in order to
19        discount competent lay witness testimony, the ALJ must give reasons
          that are germane to each witness.  We have not, however, required the
20        ALJ to discuss every witness's testimony on a[n] individualized,
          witness-by-witness basis.  Rather, if the ALJ gives germane reasons

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

> for rejecting testimony by one witness, the ALJ need only point to
> those reasons when rejecting similar testimony by a different witness.

*Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (quotations and citations

omitted); *see also Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (holding

that an ALJ permissibly rejected the claimant's ex-girlfriend's testimony in part

because her "close relationship" with the claimant and "desire to help" him

influenced her).

Contrary to Plaintiff's assertions, the ALJ offered specific and germane

reasons for rejecting these witnesses' testimony.  First, the ALJ observed that

Plaintiff's mental condition improved significantly shortly after the witnesses

testified between November 2004 and March 2005, and that, as a result, their

testimony conflicted considerably with the medial evidence.  Tr. 1052.  In light of

the obvious disparities with the objective medical evidence, the ALJ did not find

the witnesses' testimony to be particularly probative of Plaintiff's ability to work.

Tr. 1052.  Second, and in a related vein, the ALJ noted that the testimony was

based upon the witnesses' observations of Plaintiff during a relatively short period

of time in a homeless shelter.  Given that three out of the four witnesses (Messrs.

Pederson, Clifton and Villeza) did not remain in close contact with Plaintiff after

he left the homeless shelter, and that the fourth witness, Mr. Weidlich, did not

supplement his testimony during the ensuing years, the ALJ found that the

testimony did not fairly represent Plaintiff's long-term functioning abilities.  Tr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

1052.  Finally, the ALJ observed that the witnesses' testimony was internally inconsistent on several material points.  Tr. 1052.  By way of example, the ALJ noted that Mr. Clifton described Plaintiff as antisocial and a "loner," while Mr. Weidlich and Mr. Villeza testified that Plaintiff associated well with other residents in the homeless shelter.  Tr. 1052.  The ALJ's decision to afford minimal weight to the lay testimony based upon these reasons was not erroneous.

## C. Step Five Determination

Finally, Plaintiff contends that the ALJ failed to meet his burden at step five by "disregard[ing] the opinions of treating medical sources identifying severe, marked, and moderate functional limitations without good reason."  ECF No. 19 at 20.  Plaintiff does not, however, identify the specific functional limitations that the ALJ allegedly disregarded.  Nor does Plaintiff make any attempt to explain how the ALJ's "disregard" of these limitations was erroneous.  Because this argument has not been raised with sufficient particularity, the Court will decline to address it. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (declining to reach issue where appellant "failed to argue [the] issue with any specificity in his briefing"); *Rogal v. Astrue*, 2012 WL 7141260 at *3 (W.D. Wash. 2012) (unpublished) ("It is not enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's work—framing the argument

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

—

and putting flesh on its bones through a discussion of the applicable law and

facts.") (citations omitted).

**IT IS HEREBY ORDERED:**

    1.  Defendant's Motion for Summary Judgment, ECF No. 20, is

        **GRANTED**.

    2.  Plaintiff's Motion for Summary Judgment, ECF No. 19, is **DENIED**.

    The District Court Executive is hereby directed to file this Order, enter

Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

    **DATED** May 16, 2013.

THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14